# WHEELING.

## MILLER *v.* MILLER.

### July 23, 1875.

1875.
June Term.

1. W. W. M., one of the members of the firm of W. W. Miller & Co., of which J. C. C. and others were members, made the note of said firm, payable to R. M., for the sum of $4,000, payable one year after date, (the note being on its face negotiable,) with the view and purpose of getting R. M. to endorse it as an accommodation endorser, so that the said W. W. M. could raise money upon the note for the use and benefit of the firm. The said W. W. M., as an inducement to the said R. M. to endorse the note, assured the said R. M., that the said firm was good, although he did not inform said R. M. that J. C. C. was a member of the firm, and R. M. did not know who were the individual members composing the firm. When the note was endorsed K., at the instance of Q., who was acting for said firm, cashed said note by paying the amount of its face. Q., before K. cashed the note, told him who composed the said firm. The money paid by K. for the note was applied to the payment of the indebtedness of the firm, including a debt to said J. C. C. of $1,000. Before the note became payable said J. C. C. sold out his interest in the firm to said W. W. M., and ceased to be a partner in the firm, and published notice of the fact in a daily paper printed and published in the city of Wheeling. R. M. resided in the county of Brooke. K., at the instance of W. W. M., a few days before the note became payable, consented that the note might be renewed with the same endorser for six months longer. Accordingly, W. W. M. made the note of W. W. Miller & Co. to R. M. for $4,000, the amount of the first note, payable six months after date, and signed the name of the firm of W. W. Miller & Co. thereto, and R. M. endorsed the note, not knowing there had been any change in the said firm as to partners, with a view that it might be given to K. in renewal, simply, of the original note or debt, and without any intention of releasing any person liable for the original note or debt, and K. received the last named note, so signed and endorsed, simply as a renewal of the original note or debt, without know-

ledge of there being any change in said firm as to partners, and without intending, as far as appears, to release any person liable for the original note or debt; but K., when the last note was received by him, gave up to W. W. M., the original note. When the last note matured it was not paid, but was protested for nonpayment; and thereupon K. brought suit thereon against all the members of the said firm at the time the original debt was contracted; and he also brought suit thereon against R. M., the endorser, and recovered judgment therefor against R. M., and R. M. paid the full amount of the judgment, including debt, interest and costs. K. then dismissed the suit against the members of the firm, the attorney for said J. C. C. paying the costs of the suit—HELD:

That, under the circumstances above stated, and as stated in the opinion of the Court in the case, the members of the said firm of W. W. Miller & Co., including the said J. C. C., are liable to R. M. for the money so paid by him in assumpsit, as and for money paid by him as their security, for their use and benefit.

1875.
June Term..

Miller
v.
Miller.

*Supersedeas* to a judgment of the circuit court of Ohio county, rendered on the 22d day of January, 1875, granted by a Judge of this Court, on the petition of John C. Campbell. The other facts appear in the opinion of the Court.

The Hon. Thayer Melvin, judge of said circuit court, presided at the trial below.

*Joseph H. Pendleton* and *Daniel Lamb*, for the appellant.

*C. W. B. Allison* and *William P. Hubbard* for the appellee.

HAYMOND, PRESIDENT:

This is an action of trespass on the case in assumpsit, brought in the circuit court of the county of Ohio, on the 25th day of April, 1873, by the plaintiff (Robert Miller,) against the defendants (William W. Miller, William J. Bates, Jr., Thomas Moorehead, Samuel M. Darrah, John C. Campbell, and John Scott, late partners in business under the firm name and style of W. W. Miller & Co.)

The *first* count in the declaration alleges "that the defendants on the 11th day of March, 1871, at Wheeling, in Ohio county, made and signed their certain note in writing, by their said firm name, bearing date the day and year aforesaid, and thereby promised to pay to the plaintiff, six months after date thereof, the sum of $4000.00 negotiable and payable at the 'Merchants National Bank, of West Virginia, at Wheeling' for value received, and then and there delivered the note to the plaintiff; that afterwards, when the note became payable it was presented at the place of payment and payment thereof duly required, but that payment of the note in whole, or in part, was not made by any of the defendants, &c."

The *second* count is based on a $200 note dated 1st of March, 1871, made to plaintiff by same firm name, payable six months after date, at the same bank.

Each of the counts allege that each of the notes was duly protested, &c.

The *third* count is based on a note of same firm for $4000.00 made to plaintiff on the 11th day of March, 1870, and payable one year after date at the "Wheeling Savings Institution" for value received.

The *fourth* and *fifth* counts are the common counts in assumpsit for work and labor, goods and chattels sold and delivered, and for money lent and advanced to and paid, laid out and expended for the defendants at their request and for money had and received for the use of the plaintiff and for money due on an account stated. The plaintiff filed with his declaration an account; and among other items is this: "1872—For amount paid A. Wilson Kelly, as your security or endorser, upon your note for your accommodation $4.467.04."

An office judgment and writ of enquiry was regularly obtained at rules, and afterwards, on the 7th day of November, 1873, the defendants Bates, Jr., and Campbell, appeared in court and on their motion the judgment entered against them in the clerk's office was set aside and they pleaded *non-assumpsit* on which issue was joined, and

the defendant Campbell filed at the same time an affidavit denying the partnership alleged in the declaration, at the date of the note dated the 11th day of March, 1871; but no affidavit was filed denying the partnership alleged in the *third* count of the declaration on the 8th day of March, 1870.

This last named note became payable on the 11th day of March, 1871, allowing the three days of grace to which it was entitled.

On the 20th day of November, 1874, a jury was duly selected and sworn to try the issue joined, and the jury having heard the evidence, the defendants demurred thereto and the plaintiff joined in the demurrer. And the jury found for the plaintiff and assessed his damages at $5,034.89, being the aggregate of principal, and interest of said damages to the said 20th day of November, 1874, "if the court is of opinion upon the demurrer to the evidence that the law is for the plaintiff, otherwise we find for the defendants."

Afterwards, on the 23d day of January, 1875, the court overruled the demurrer to the evidence and gave judgment for the plaintiff for said sum of $5,034.89 the amount so found by the jury with interest thereon from the 20th of November, 1874, until paid and the costs of the suit. To this judgment the defendant, Campbell, obtained a *supersedeas* from one of the Judges of this Court, in vacation, and it is now to be determined whether the circuit court erred in its said judgment.

All the evidence adduced at the trial is fully stated in the demurrer to the evidence, by which it appears, substantially, that on the 8th day of March, 1870, all the defendants were partners in business under the firm name and style of W. W. Miller & Co., and that the said firm was then indebted in their business, and with the view and purpose of raising money to liquidate that indebtedness, the defendant, W. W. Miller, the active business man of the firm in its financial department, made the negotiable promissory note of the firm in these words, viz:

69

"WHEELING, W. VA., 8th March, 1870.

One year after date we promise to pay to the order of Robert Miller four thousand dollars, at the Wheeling Savings Institution, value received.

W. W. Miller & Co."

"Endorsed, Robert Miller,
A. W. Kelly."

and procured the plaintiff, for the accommodation of said firm, to endorse said note; that when the note was so endorsed, it was taken by said W. W. Miller, and placed by him in the hands of one Quarrier, the treasurer of said Savings Institution, to dispose of at 10 per cent. discount, for money for the use of said firm; that said Quarrier did procure A. Wilson Kelly to take said note, and pay the cash therefor at the rate of ten per cent. interest, the interest payable in six and twelve months, for which two negotiable promissory notes were made in the same manner, payable to plaintiff, and by him endorsed, for the accommodation of said firm, the same as the other note. It is unnecessary to notice the two last named interest notes, as they were paid at or about maturity.

It appears that at the time plaintiff endorsed said notes, that he did not know who composed said firm; that he endorsed them at the instance of said W. W. Miller, who before, and at the time, assured plaintiff that the firm was good; that the four thousand dollars paid by Kelly for the said note, to Quarrier, for said firm, was applied to the payment of the debts thereof, $1,000 of which was paid to the defendant Campbell, on a debt due him by the firm for money loaned; that Kelly before and about the time he cashed the note enquired of said Quarrier who were the members of said firm, and Quarrier told him who they were, but Kelly, at the trial, when he gave his evidence, had forgotten their names; that at the maturity of the note, or about that time, said W. W. Miller went to Kelly and said to him, that "they" would like to renew it for six months, with the same indorse-

ment, for the company, and Kelly told him there would be no objection to it, and there was another note drawn up, signed by said W. W. Miller, with said firm name, and sent to plaintiff for endorsement, and when it was returned, Kelly took it and gave up the old one for the same amount. The last named note is in these words, viz:

"$4,000.00.    WHEELING, W. VA. March 11, 1871.

Six months after date we promise to pay to the order of Robert Miller, four thousand dollars, negotiable and payable at the Merchants National Bank of West Va., value received.

W. W. Miller & Co."

"Endorsed, Robert Miller."

That at the same date there was another $200 negotiable promissory note drawn up and signed by said W. W. Miller with said firm name and endorsed by plaintiff at the same time, payable six months after date for the interest on the $4000.00 note which was also delivered to Kelly at the same time of the $4000.00 note; that some months after the 8th of March, 1870, before the note matured, defendant Campbell, sold out his interest in said firm to defendant, W. W. Miller, and from that date ceased to be a member of the firm, but the firm name continued the same as before; that plaintiff at the time of the renewal of said $4000.00 note, did not know that defendant Campbell was ever a member of said firm; that said Campbell published in the Daily Wheeling Intelligencer of December 5, 1870,- a newspaper printed and published in the city of Wheeling, a notice which is in the words following, viz: "Notice—I have this day sold my interest in the firm of W. W. Miller & Co., to W. W. Miller and have no further interest in said firm.

J. C. Campbell."

There is no evidence showing or tending to show that either Kelly or plaintiff could have had notice

that Campbell had ceased to be a member of said firm except the simple publication of said notice in said "Daily Intelligencer." That plaintiff did not reside in the city of Wheeling, but resided in the county of Brooke. It is also proven by the evidence of W. W. Miller, substantially, that there was no secret about Campbell becoming a partner in the firm; that "it was known generally" that each of said firm notes were signed by. said W. W. Miller with the firm name and there is no evidence in the case tending to prove that said Campbell authorized said W. W. Miller, or any of the partners, to sign said firm name in any manner so as to bind him after his retirement from the firm as a partner; or that he had any knowledge of the note given in renewal of the first $4000.00 note until after its maturity. After the maturity of the last note and the protest thereof suit was brought thereon by said Kelly against the firm of W. W. Miller & Co., including Campbell, for the recovery thereof; and afterwards and during the pendency of the first named suit, suit was also brought by Kelly against the plaintiff to recover the amount thereof and judgment was had against the plaintiff for the same and very. shortly afterwards he paid the full amount of the recovery which then amounted, principle and interest and costs, in the aggregate to $4,467.04. This payment was made September 2, 1872. There is no evidence in the case tending to show or from which it can be reasonably inferred that it was the purpose or intention of Kelly or plaintiff to change the character of the debt by the renewal, or to release any person bound for the debt, further than the simple making, endorsement and delivery of the renewal note, under the circumstances above stated; nor does it in any wise appear that it was the agreement or understanding of either Kelly or plaintiff that the renewal note was made, endorsed and delivered to Kelly in satisfaction of the original debt or note, further than may be properly inferred from the transaction.

It further appears that the original note remained in the possession of W. W. Miller, in his safe, with the other papers of said firm, until about the time, or after, plaintiff paid the money as aforesaid, at which time one of the counsel of plaintiff procured it from among said firm's papers, as may be inferred, for the benefit of plaintiff, so far as it could properly benefit him in legal proceedings against the defendants, including Campbell.

It further appears that the suit of Kelly against the defendants was dismissed after the plaintiff paid the money, as aforesaid, and that the costs of the last named suit were paid by one of the counsel of defendant Campbell.

I have given the substance of the material facts in this case.

This case being upon a demurrer to evidence filed by the defendants this Court must construe the evidence most favorable to the demurree.

It cannot be denied that Campbell, whether he was a dormant or ostensible partner in the firm of W. W. Miller & Co., was liable for the debt which the note of the 11th of March, 1871, was given in renewal of, and he was so liable as one of the principal debtors. The plaintiff, as endorser and the defendants, were all liable to Kelly for the amount of said debt, but as between the plaintiff and the defendant, the plaintiffs stood in the relation of security for them. If when the note for the debt matured the plaintiff had then paid it, as he had the right to do, there can be no question but that all the defendants would have been liable to the plaintiff for the full amount so paid by him. But does the fact of the giving of the renewal note and the payment by him afterwards, under the circumstances, deprive him of the right of recovery from the defendants, including the defendant Campbell? No question as to the liability of any of the defendants is made or argued before us except as to defendant Campbell, and I presume none could be made. In the case of *Moses v. Trice*, 21 Gratt., 556,

1875.
June Term.

Miller
v.
Miller.

Judge Staples, in delivering the opinion of the court, on pages 567 and 568, said: "As before stated, the original loan was made in 1863 or 1864, and note given for its repayment which was renewed from time to time. The last note being dishonored, there is nothing to prevent a resort to the original consideration. Upon familiar principles, if a note is taken as a conditional payment, or in renewal, and is not duly paid or discharged, the original debt revives; and this principle applies to every renewal which is but a continuation of the same debt. Nor is it material whether the note or bill be given for a precedent or contemporary debt; in neither instance will it operate as an extinguishment or payment, unless it be so accepted by the creditor. If not paid at maturity, the creditor may sue upon it, or upon the original cause of action." He cites, as authority, Story on Bills, section 418; Byles on Bills, 284; 2 Parsons on Bills and Notes, 156; 5 Robinson's (new) Practice, 845; *Farmers' Bank v. Mutual Assurance Society*, 4 Leigh, 69; *Parker v. Cousins*, 2 Gratt., 372. In the case of *Parker v. Cousins*, above cited, it was *held*, "Partners make a note, and then the partnership is dissolved. The partner who is authorized to settle up the business of the partnership cannot renew the note in the partnership name so as to bind the other partner. In such a case, though the last note does not bind the partner who has not executed it, the first note is still a valid security as against him, though it was surrendered when the last note was taken. The renewed note being made in the partnership name, it cannot be inferred that the creditor intended to release the partner who did not execute it, and look alone to the party who renewed the note for payment. The taking a new security from one of two joint debtors will release the other, if, in any case, *only* where there is an agreement by the creditor, express or implied, that he shall be released." This case was ably argued and seems to have been well considered. Judge Stanard delivered the opinion of the court, and on pages 387 and 388 he says:

"There being a valid debt, existing at the dissolution of the partnership of Wyche & Parker, the question is, was anything which has since occured absolved Parker from the responsibility? The elaborate argument of the counsel for the plaintiff in error, though most creditable to his industry and ingenuity, is unavailing to justify an affirmative answer to this question, without entering into the enquiry whether in any case the unperformed promise, oral or written, by one of two already bound for the same debt, by a like promise to the same party, can discharge, or be pleaded or used in evidence to bar the legal remedy on the original promise, I think it may be safely affirmed, on principle and authority, that such discharge will not be effected, nor such bar created, unless the parties making and accepting the new promise intended or stipulated that such discharge or bar to the former *assumpsit* should be the consequence of the making and acceptance of the new renewal promise. The new note given by Wyche in the name of the old partnership (whether the new note *proprio vigore*, in strict law bound Parker or not) is plenary evidence that neither Cousins or Wyche stipulated or expected, or intended to discharge Parker from his responsibility for this debt." See also *Lazier v. Nevin*, 3 W. Va., 622, 627; *McGuire v. Gadsby*, 3 Call, 234; *Farmers' Bank v. M. A. Society*, 4 Leigh, 69, 88; Story on Promissory Notes, section 389; Robinson (new) Practice, vol. 5, 841 to 865, inclusive. The evidence in the case at bar is plenary that neither Kelly or the plaintiff stipulated, or expected or intended to discharge from responsibility, in the making, endorsing, &c., the note given in renewal any member of the firm or person who was liable for the original debt. Kelly and plaintiff each clearly had no knowledge of any change in the firm of W. W. Miller & Co. They each evidently supposed that all persons who were parties to the original note were parties to the last note, and the only thing contemplated or intended was the extension of time of payment. The renewal note for $4,000 was not a new debt and was not taken and received in satisfaction of the old debt.

All things and persons connected with the original debt were intended by Kelly and plaintiff each to remain and continue as before, except the time of payment. This it seems to me is, from the evidence, beyond question. The plaintiff, when he endorsed the last note had, under the circumstances, the right to suppose and believe that there was no change in the said firm and he acted on that supposition, as may be fairly and justly inferred.

If, under the authorities cited, the renewal note did not satisfy and discharge the original note or debt who did satisfy and discharge it? The answer is, the plaintiff. How did he satisfy and discharge it? The answer is, with his own money. Who were benefitted by its payment? The answer is the defendants, including Campbell, because if the original debt was in existence against all the defendants until actually paid by plaintiff, then it must be considered that the plaintiff as security for the debt which was in fact the debt of all the defendants paid the same to Kelly for the use and benefit of the defendants. And the plaintiff was entitled to his action against the defendants, including Campbell, for money paid as their security for their use and benefit. This case is unlike the case of *Waterman Palmer v. Richard H. Dodge,* 4 Ohio State, 21, and it seems to me, is, clearly distinguishable from it on principle. There, the endorser of the last note was not a party to, or in any wise liable for the original debt, as in the case before us. The opinion of Judge Ranney, delivered in that case, is certainly able and is probably correct law when applied to the facts of the case in which it was delivered.

For the foregoing reasons the said judgment of the circuit court must be affirmed with costs and damages according to law.

Hoffman and Moore, Judges, concurred.

JUDGMENT AFFIRMED.