# CHARLESTON.

FIRST NATIONAL BANK OF PARKERSBURG *v.* HANDLEY *et al.*

## Decided December 21, 1900.

1. APPROVED.
   Syllabi in *Gray* v. *Association*, 37 S. E. 533, approved. (p. 700).

2. NOTE—*Payment—What Constitutes.*
   H, and others, devisees of E., executed two joint notes, at eighteen months and three years, respectively, to B., and a deed of trust on the real estate devised to them by E., for the amount of a past-due note made by E., which was a charge against said real estate. *Held*, that, in the absence of an express agreement to that effect, the taking of the two notes by B. was not an absolute payment of the note, and release of the estate of E. from liability therefor. (p. 701).

Appeal from Circuit Court, Cabell County.

Bill by the First National Bank of Parkersburg against Edward C. Handley and others. Decree for plaintiff, and Hattie Handley, administratrix, appeals.

*Modified.*

VINSON & THOMPSON, for appellant.

L. D. ISBELL and SIMMS & ENSLOW, for appellee.

MCWHORTER, PRESIDENT:

On the 13th day of January, 1894, Elizabeth Handley, being holder of twenty-five shares of stock in the Baltimore Building and Loan Association, said association advanced her the sum of two thousand five hundred dollars on her said stock. To secure the payment thereof to the association she on that day executed her bond to the said association for said amount obligating herself to pay to said association monthly installments on said sum of two thousand five hundred dollars at the rate of six per centum per annum, monthly dues on said shares of stock and monthly premiums thereon, and all fines assessed against her under the rules and regulations of said association, and all taxes or assessments accruing on or against the real estate hereinafter mentioned, and all premiums of insurance necessary to keep the said property insured in such sum as the association should require,

not exceeding two thousand five hundred dollars, and all fees, costs and expenses to or for which the association, or the trustees in the deed of trust securing said bond might become liable by reason of any litigation touching the transaction, and executed a trust deed on her residence property in the city of Huntington to L. D. Isbell, trustee, to secure said bond and the payment of the money to said association. Said Elizabeth Handley afterwards executed a second deed of trust on the same property to secure J. N. Camden the payment of certain notes therein described. On the 6th day of August, 1896, the First National Bank of Parkersburg, a corporation, filed its bill in the circuit court of Cabell County against Ed. C. Handley, Howard Handley, Hattie Handley, administratrix of the estate of Elizabeth Handley, deceased, in her own right, Belle Handley, Kate Frizzell, Isaac Handley, James Handley, Ollie Handley, Thomas A. Wyatt, trustee, the Baltimore Building and Loan Association, a corporation, Z. T. Vinson, J. N. Camden, J. W. Baldridge, and H. T. Lovett, trustee, alleging the execution of the bond and deed of trust to trustee Isbell for the benefit of the said association, and the deed of trust to secure Camden, that plaintiff had discounted for Camden the notes, and was the holder and owner thereof, and entitled to the benefit of the trust deed to secure the payment thereof; that Elizabeth died leaving as her heirs and distributees the defendants Handleys named and said Kate Frizzell; that she was possessed of no personal property except her household goods, but was the owner of the said property in Huntington, and also a tract of twenty-two acres of land in Wayne County; that Belle Handley, Hattie Handley, Howard Handley, Kate Frizzell and her husband, W. S. Frizzell, heirs of Elizabeth Handley by deed of March 18, 1896, conveyed to H. T. Lovett, trustee, the said twenty-two acres of land in Wayne County, to secure to James W. Baldridge the payment of two notes for one thousand two hundred and seventy-seven dollars and twenty-two cents each, dated March 18, 1895, payable in eighteen months, and three years respectively from date, with interest, made by the said Belle Handley, Hattie Handley, Howard Handley, and Kate Frizzell, negotiable and payable to the order of said Baldridge at the Huntington National Bank; that said notes and deed of trust were given without consideration, and with the intention of hindering, delaying and preventing the collection of plaintiff's debt; that as a matter of fact there

was no money due from the estate of Elizabeth Handley to Bald-bridge, and the attempt to give said trust deed and make the same a preferred lien on said property to the exclusion of other creditors of the estate of Elizabeth Handley was a fraud upon the rights of the other creditors of said estate, and the deed should be set aside and the property should be charged with the payment of all the debts of the estate *pro rata;* that the Huntington property would not suffice to pay the liens upon it, and plaintiffs would have to have recourse to the Wayne property, and that it has a specific charge against the same for any balance that may remain unpaid after exhausting the Huntington property; and prays that the Huntington property be sold and the surplus arising after the payment of the Baltimore Building and Loan Association be applied as a credit on plaintiff's debt; that the account against the estate of Elizabeth Handley be settled; that same be referred to a commissioner; and for general relief. On the 22d of July, 1896, the bill having been taken for confessed as to all the defendants except J. W. Baldridge, who filed his answer, to which plaintiff replied generally, and the cause was referred to a commissioner to ascertain and report of what property Elizabeth Handley died seized and possessed, what debts she owed, what liens were on the property and their priorities, and to settle the administration accounts of the administrator Hattie Handley. The answer of J. W. Baldridge avers that Elizabeth Handley died seized of the Huntington property purchased from Z. T. Vinson, and of twenty-two acres in Wayne County, that by will dated May 10, 1892, she devised the said twenty-two acres to Belle Handley, Hattie Handley, Howard Handley and Kate Frizzell, who executed to H. T. Lovett the deed of trust on said twenty-two acres as set out in the bill, but denies all fraud and fraudulent intention in its execution; avers that it was executed for good and valuable consideration, that the debt therein secured was due from the estate of Elizabeth Handley to respondent; avers that his debt secured by said deed of trust of two thousand four hundred and fifty-four dollars and forty-four cents was still due and unpaid, and was a valid lien on said twenty-two acres, and that he was a *bona fide* purchaser for valuable consideration. Hattie Handley, administrator of Elizabeth, filed her answer to the bill of complainant, and replied generally to the answers of Baldridge and of the Baltimore Building and Loan Association, and says that the consideration

of the notes made by herself and others to Baldridge was a note held by said Baldridge on her brother Ed. C. Handley, and originally endorsed by their mother Elizabeth Handley; that it was negotiable and was never protested, and Elizabeth was by such nonprotest released from liability or obligation to pay it; that at the time of the making of the new notes Elizabeth was not liable and they made the new notes to help their brother Ed. C. Handley out, and Baldridge accepted the new notes and security in full payment of the original note, and that both said Ed. C. Handley and Elizabeth Handley were released by the payment aforesaid, and said note was surrendered to Ed. by Baldridge, and cancelled by Ed.; that respondent refused to make any new obligation on the part of the estate of Elizabeth Handley by signing the new notes as administratrix, but executed it solely in her individual capacity for the relief of her brother Ed. C. Handley, and responding to the answer of the Loan Association says that Elizabeth Handley borrowed two thousand five hundred dollars and had paid back on account of said loan one thousand two hundred and seventy dollars, which should be credited upon said trust debt, as per statement filed as exhibit "Bryan," that she had endeavored to have said association give her proper credit therefor, but it had declined to do so, and claimed two thousand one hundred and ninety-seven dollars, after exhausting said payments of one thousand two hundred and seventy dollars, being its claim on the theory that it is a building and loan association, and entitled to charge premiums, dues and fines in excess of the legal rate of interest. Respondent says it is a foreign building and loan association, created under the laws of the state of Maryland, is doing business in West Virginia; that it has no legal existence and can do no business in this State except it conform to the laws of West Virginia, and bring itself within and under the protection of sections 25, 26, 27, 28, and 29, chapter 54, Code, which it has not done, and files copy of by-laws to show that it had not done so, and that if it had so complied with our local statutes it could not charge and collect an usurious rate of interest, the statute itself being unconstitutional, illegal, null and void, and respondent pleads usury to the debt claimed by the association, and prays that the principal sum borrowed with its legal rate of six per cent. interest may be credited by the payments with their accumulated interest; and that the debt claim-

ed by Baldridge may be decreed no charge against the estate of decedent, and for general relief, which answer was treated as a cross bill as well. J. W. Baldridge replied to the answer of the administratrix Hattie Handley, that the allegations of said answer are not true, that the original note was a debt of Elizabeth Handley, that it was duly protested and binds her estate. And on the 21st day of April, 1898, the Baltimore Building and Loan Association tendered its answer to the cross bill of Hattie Handley, administratrix, which was ordered to be filed, and to which said Hattie and the plaintiff tendered their exceptions, which were ordered to be filed. The answer alleged that it was duly incorporated under the laws of Maryland, and doing business in the city of Baltimore in said state; that on the 6th of May, 1901, it caused to be filed in the office of the secretary of state of West Virginia a copy of its articles of association, and of the laws of Maryland under which it was incorporated, and obtained from the secretary of state his certificate authorizing it to do business and hold property in this State; that the object of the corporation was and is "to aid and encourage industry, frugality, home-building and saving among its members," according to the spirit and intent of sections 25 to 30 inclusive of chapter 54, Code of West Virginia, and to that end, as expressed in its charter, to lend to its members the funds and money of the investing members of the corporation at a fixed minimum premium to be secured by the first lien upon real estate for the improvement of which the money should be advanced and loaned; that Elizabeth Handley on the 11th of December, 1893, made her application, and became a member and subscriber for thirty shares of stock, and a certificate duly signed and sealed was issued to her, which application and certificate are exhibited with the answer, also the charter and by-laws. That on the 13th day of January, 1894, she borrowed two thousand five hundred dollars, upon her said certificate of stock, and secured the payment thereof by her bond of that date and deed of trust; that by the express terms of said stock certificate the payments agreed to be made upon said stock by said Handley were to be made at the home office in Baltimore in Maryland, as will appear by the conditions thereon thereby making the laws of Maryland the laws of the place where the contract was to be performed; that Handley agreed to pay upon said stock certain monthly dues, interest, premiums and fines, as follows: dues, eighteen dollars;

premiums, twelve dollars and fifty cents; interest, twelve dollars and fifty cents, and fines for any monthly failure to pay her dues, interest and premium, one dollar and fifty cents, and filed a statement of her account showing the amount necessary to repay her loan and cancel her stock February 18, 1898, two thousand seven hundred and forty dollars and seventy-three cents; that the sum of two thousand five hundred dollars represents the present value of twenty-five shares of the stock subscribed for and the loan is simply the payment in advance by the company of the stock purchased by Handley and which stock is pledged to secure the company's purchase thereof, denies that the premiums agreed to be paid are usurious, but that said premium is authorized by the law of Maryland and by the law of West Virginia, and exhibits the law of Maryland as part of its answer; that it has complied with the laws of West Virginia in every respect in all its contracts and dealings with said Handley and denies that section 26, chapter 54, Code is unconstitutional and prays enforcement of its contract. The exceptions of plaintiff and Hattie Handley, administratrix, to said answer are, that the answer is not responsive to the cross bill; that it shows that said association has not complied with the statutes of West Virginia creating and permitting building and loan associations to do business in this State, in this (a) The by-laws have not incorporated the West Virginia statutes into their articles. (b) They do not require the money offered for a loan to be let to the highest bidder in competition. (c) The money loaned was not bid off, nor was it offered to bidders, nor is there any minimum premium fixed by said by-laws. 3. In such case said association is not permitted to charge more than six per cent. interest per annum. 4. Said association seeks to charge interest, dues, premiums and fines upon said loan since the pendency of this suit. 5. And for other causes apparent on the face of said answer. Depositions were taken and filed concerning the claim of Baldridge, and of the Baltimore Building and Loan Association. The commissioner filed his report, that Elizabeth Handley died seized of the two parcels of real estate situate in Huntington and Wayne County respectively, that the Baltimore Building and Loan Association trust deed is the first lien on the Huntington property upon which there was due as of December 7, 1896, the sum of two thousand one hundred and ninety-seven dollars, that the second lien upon the same prop-

erty is the trust deed held by plaintiff upon which there was
due as of December 7, 1896, three thousand one hundred and
twenty-six dollars and thirteen cents and reported the deed of
trust on the twenty-two acres in Wayne County of March 18,
1895, to secure the two notes to J. W. Baldridge, only one of
which was past due, that one amounted to one thousand four
hundred and nine dollars and nineteen cents as of December 7,
1896, but submitted to the court the question of the validity of
said deed of trust, and finding it the first prior lien upon said
real estate, if valid, and finds on settlement of the administra-
tion accounts of said Hattie Handley, administratrix of Eliza-
beth Handley, a balance in the hands of the administratrix of
two thousand five hundred and fifty dollars. Hattie Handley,
administratrix, excepted to said report because Elizabeth Hand-
ley had paid back upon the sum of two thousand five hundred dol-
lars borrowed, from time to time the sum of one thousand two
hundred and seventy dollars, for which she was entitled to credit,
and filed her book of receipts and asks that said credit be allowed
her, and she further excepted because she claims that the debt
claimed by Baldridge is not a charge against the estate of her
decedent, that so far as the estate is concerned it has been paid
off and discharged. Defendant J. N. Camden excepted to the
report, and says the two notes owned and set up by J. W. Bald-
ridge are not charges against the estate of Elizabeth Handley,
and are not liens or charges against any property, real or per-
sonal, owned or seized by her at the time of her death, "because
First. The note endorsed by Elizabeth Handley was paid off
and surrendered and her estate released and other parties taken
for its payment, who executed their individual notes secured by
trust deed. Second. The original note endorsed by Elizabeth
Handley was never protested and she was released. Third. The
original note was a contract to be performed in the state of
Kentucky, and under the laws of that state, her endorsement
made her only a grantor, and by operation of law she is released
as grantor unless suit be brought against the maker of the note
within six months from maturity, which was not done in this
case," and defendant Z. T. Vinson and plaintiff filed the same
exceptions as Mr. Camden. On the 22d of July, 1898, the case
was heard, the court overruled the exceptions to the commis-
sioner's report filed by Hattie Handley, administratrix, and con-

firmed the report, and ascertained the liens on the Huntington property to be, first, the lien of the Baltimore Building and Loan Association, with interest to July 21, 1898, two thousand four hundred and eleven dollars and twenty cents, and second, the trust deed owned by First National Bank of Parkersburg, with interest to July 1, 1898, three thousand four hundred and thirty dollars and ninety-two cents, and decreed the sale of said property to pay said liens, and considering the questions raised upon the exceptions to the report of the commissioner as to the claim of J. W. Baldridge and as to his rights to subject the twenty-two acres in Wayne County, the court was of opinion that the said debt of Elizabeth Handley was not paid by the notes taken by Baldridge and secured by a lien upon said real estate executed by the devisees of Elizabeth Handley and that the said debt was originally a valid and subsisting debt of the said Elizabeth Handley in her life time, and was not discharged by the taking of the heirs' note subsequent thereto, and over-ruled the exceptions of plaintiff and defendants Camden and Vinson to the commissioner's report, and fixed the debt of Baldridge at three thousand and sixty-six dollars and fifty cents, which sum is a charge upon the real estate of which the said Elizabeth Handley died seized, and decreed a sale of the twenty-two acres in Wayne County for any deficiency, that may remain after the sale and application of the proceeds of the Huntington property, first to the two liens thereon, then to the Baldridge debt, and if the Huntington property shall not pay off the two liens thereon, then the residue of such liens shall be paid *pro rata* with the Baldridge debt out of the proceeds of the twenty-two acres which was decreed to be sold if it should be necessary to so pay the debts; from which decree Hattie Handley, administratrix, appealed and assigned the following errors: First. In overruling the exceptions to the commissioner's report. Second. In not allowing full credit for the sum paid on the building association debt. Third. In holding that said association did not have to comply with the statutes of West Virginia in order to transact business as such association in this State. Fourth. In holding that the statute permitting usury to be charged by building and loan associations is constitutional. Fifth. In holding that the original note endorsed by Elizabeth Handley to P. T. Baker was a continuing charge upon the estate of Elizabeth Handley. Sixth. In refusing to hold that the new notes and

new securities given for the return of the old note was a payment and discharge of the old obligation.

The first assignment in so far as the exceptions to the commissioner's report relate to the claim of the Baltimore Building and Loan Association, and the second, third, and fourth assignments, which relate to the same claim and matter, can be disposed of together. Since this cause was submitted the questions arising in this cause touching said claim have been passed upon by the court of appeals of the state of Maryland, the home of the Baltimore Building and Loan Association, in the case of Isaac H. White, appellant, against Jay Williams, assignee of said association, appellee, decided March 21, 1900, 90 Md. 719, wherein it is held, "That the premium authorized to be charged by the building association is a sum of money to be paid for the loan in advance, and that the stipulation providing for the payment of the monthly sum called premium, in addition to the legal rate of interest during the continuance of the mortgage is not authorized by the statute, but is usurious. *Geiger* v. *Eighth Ger. B. Assoc.*, 58 Md. 574. The defendant association shows that the contract on which its claim is based is a Maryland contract, and has also been decided by this Court in the case of *M. L. Gray* v. *The Baltimore Building and Loan Association*, decided April 21, 1900, where it is held, "While a building association may fix a minimum premium payable in advance or in periodical instalments, such premium must be a lump sum, certain and definite, and not a percentage payable indefinitely at fixed periods," and "A percentage payable indefinitely at fixed periods is interest, and although it be called premium, and is in addition to the legal rate of interest already charged, it is usurious, and should be expunged from the account." The exception of Hattie Handley, administratrix, to the report of the commissioner in so far as it goes to the statement of the account of the Baltimore Building and Loan Association should have been sustained.

The first assignment so far as it refers to the J. W. Baldridge debt, and the fifth and sixth assignments will be considered together, as they also involve the same questions raised by the exceptions of defendants J. N. Camden, Z. T. Vinson and the plaintiff to the commissioner's report. Ed. C. Handley made his note, dated March 17, 1893, at four months, payable to the order of P. T. Baker for two thousand six hundred and three dollars

and thirty-three cents, at the Big Sandy National Bank, Catletts-
burg, Ky., which note was endorsed by Elizabeth Handley, and
by P. T. Baker endorsed over to J. W. Baldridge. On maturity
the note was protested. Afterwards, on November 20, 1893,
there was a payment made on said note of two hundred and
ninety dollars and thirty-six cents. Suit was brought on said
note by J. W. Baldridge against Ed. C. Handley and Elizabeth
Handley in the common pleas court of Hamilton County, Ohio,
as shown by the testimony of A. G. Turnipseed, attorney for
Baldridge, that said suit was afterwards dismissed at defend-
ants' costs and settled by giving a deed of trust on the twenty-
two acres of land in Wayne County as security for the payment
of said note, with the understanding that the estate was still
to be held liable on said note, and the trust deed was given as
further security; that said note was protested at Catlettsburg,
Ky., that at the time suit was brought on it the certificate of
protest was attached to it; that he had looked for the certificate
among his papers in his desk where he would most likely find it,
but had been unable to find it, that the note was not delivered to
Ed. Handley at the time suit was dismissed, but some time after-
wards at his request the note was delivered over to him that he
might show to the folks at home that the suit was dismissed and
with the agreement and understanding that no parties were to be
released from the liability of the note. The testimony of P. T.
Baker is that at the time of giving the deed of trust it was
understood that Elizabeth Handley was not to be released, as to
the exact language he did not think he could give it, but that he
insisted all the time that she should not be released, as he was
still liable for the amount named in the trust deed. Witnesses
Turnipseed and P. T. Baker are both very emphatic in their
testimony that the estate of Elizabeth Handley was not to be
released from liability on the old note, and Turnipseed explains
the object of the surrender of the old note to Ed. C. Handley
some time after the taking of the new notes that he might show
it to his people to show that the suit was dismissed. The deed
of trust contains the following recital: "Whereas, heretofore
Mrs. Elizabeth Handley, now deceased, mother of the foregoing
named parties of the first part, Belle Handley, Hattie Handley,
Howard Handley and Kate Frizzell, on the 17th day of March,
1893, for value received, became the endorser on a certain nego-
tiable promissory note executed by her son Ed. C. Handley,

bearing date the said 17th day of March, 1893; and that whereas, the parties owning and holding said note and now about to bring suit against the real estate formerly owned by the said Elizabeth Handley and devised by her to the said Belle Handley, Hattie Handley, Howard Handley and Kate Frizzell by will, to subject said real estate to the payment of said note, and they, the said heirs, knowing that such a suit would result in the sale of their said property at a great sacrifice: Now, therefore, in consideration of the premises and of the extension of time of the payment of said claim by the said party owning and holding said note, as hereinafter set out, and in order to prevent the bringing of said suit."

The parties who executed the trust deed as well as Ed. C. Handley testified that the said notes and trust deed were given in payment of said note endorsed by Elizabeth Handley. Ed C. Handley said "they were to surrender the old note, my mother's note, with my mother's endorsement." Howard Handley said: "Mr. Turnipseed was to surrender the note to Ed., told Ed. to call at his office and he would give it to him." Belle Handley testified that Mr. Turnipseed promised if they would give a joint note that they would release her mother's note, and the new notes and trust deed were given to release her mother's note. Kate Frizzell's evidence was about to the same effect. The evidence is conflicting as to whether the estate of Elizabeth Handley was to be released or not. The circumstances of the making of the note makes Elizabeth Handley, while apparently an endorser, one of the makers of the note, and the recital by the grantors in the deed of trust treats the transaction in the same way when it says that Elizabeth Handley "for *value received* became the endorser" on the note. In *Roanoke Grocery and Mill Co.* v. *Watkins*, 41 W. Va. 787, it is held that, "When a negotiable promissory note, made payable to a particular person or order, is first endorsed by a third person and then delivered to the payee, such third person is held as an original promissor, guarantor or endorser, according to the nature of the transaction and the understanding of the parties, and this may be shown by parol proof." Taking the recital in the trust deed and the oral testimony together the preponderance of the evidence is against the agreement sought by the appellant to be established, to the effect that the new notes were taken in absolute payment of the original note, and that the estate of Eliza-

beth Handley was to be released from all liability. And the holding of the circuit court to that effect should not be disturbed. "To give to the acceptance of a note the effect of an absolute payment or extinguishment of a debt, a contract that it should be so, must be shown." *Glenn* v. *Smith*, 2 Gill. & J. 493; *Porter* v. *Talcott*, 1 Con. 380; *Bank* v. *Association*, 4 Leigh, 88; in *Dunlap* v. *Shanklin*, 10 W. Va. 662, syl. 2: "Taking a note from the debtor or a note of a third party, is no discharge of the debt, unless it is expressly agreed between creditor and debtor that it is in absolute payment thereof." *Bank* v. *Good*, 21 W. Va. 455; *Feamster* v. *Withrow*, 12 W. Va. 611; 2. Dan. on Neg. Ints. ss. 1266-1267. It is claimed by appellant that under the rule in *Hess* v. *Dille*, 23 W. Va. 90, acceptance of the notes of third parties not previously bound for the debt and the surrender of the old note must not be taken *prima facie* as a discharge of the old note and the release of the estate of Elizabeth Handley from liability, but in the syllabus of that case it is held that the surrender of the old note of itself will not raise a presumption of an agreement that it shall be an absolute payment and release, especially when the creditor would thereby lose some security whch he held for the debt. The original note was the debt of Elizabeth Handley and was a charge upon her estate and upon the real estate which her children executed the deed of trust. They feared the property would be sacrificed and made the arrangement for the purpose of extending the time; the debt was past due, and threatening the property, and their object was to accomplish without any express agreement that the new notes should be taken in absolute payment of the old note, and the estate of Elizabeth Handley released from all liability for the debt.

The decree should be so modified as to give credit to the estate of Elizabeth Handley for all that has been paid on account of the debt of the Baltimore Building and Loan Association according to the principles herein laid down, and with such modification affirmed.

*Modified.*