# CHARLESTON.

LLOYD W. GARRETT v. JOHN PATTON.

Submitted February 19, 1918.  Decided March 5, 1918.

1. PAYMENT—*Collateral Security—Presumption.*
    An order drawn by a debtor upon a third party, and delivered to his creditor for a debt, is presumptively taken by such creditor as collateral security for such debt. (p. 774).

2. SAME—*Discharge of Debt—Agreement.*
    But in such case, the parties may make a specific agreement that such order shall be a discharge or absolute payment of such debt, and· when this is done such agreement will be given effect. (p. 774).

3. CONTRACTS—*Agreement for Payment—Construction.*
    In interpreting such agreement, where the language used is susceptible of two meanings, the same rules of construction will be applied as are employed in the interpretation of other contracts, that is to say, the conditions surrounding the parties at the time, as well as the acts done by them under the agreement, will be considered along with the language employed· by them. (p. 774).

4. JURY—*Disqualification—Service with Party.*
    The fact that a party who has a suit to be tried by a jury at a particular term of court serves as a petit juror at that term, disqualifies all of the jurors with whom he has so served from sitting in his case tried at the same term of court. (p. 778).

5. NEW TRIAL—*Disqualification of Juror—Knowledge.*

In order that the disqualification of a juror may be made ground for setting aside a verdict, it must be made to appear by the party making the motion that he did not know of, and could not have discovered by the use of reasonable diligence, such disqualification before the jury was sworn.   (p. 778).

6. SAME—*Grounds—Disqualification of Juror—Prejudice.*

Even though a party does not know and could not have known by the exercise of ordinary diligence, of the grounds of disqualification of such juror before the jury was sworn, the fact that such disqualified juror was a member of the jury that tried his case will not be ground for a new trial, unless it also appears from the whole case made before the court, on the motion for a new trial, that the party suffered an injustice from the fact that such juror served in the trial of the case.   (p. 778).

7. APPEAL AND ERROR—*Reversal—Disposition of Case.*

Where the verdict of a jury is set aside by the judgment of a circuit court based upon a misapplication of the law to conceded facts, such judgment will be reversed and the verdict reinstated.   (p. 780).

Error to Circuit Court, Harrison County.

Action by Lloyd W. Garrett against John Patton.   Judgment for plaintiff, and defendant brings error.

*Reversed, judgment for defendant.*

*George M. Hoffheimer* and *Sperry & Sperry,* for plaintiff in error.

*Edmund F. Garrett* and *Cornelius C. Davis,* for defendant in error.

RITZ, JUDGE:

The defendant prosecutes this writ of error to review a judgment of the circuit court of Harrison county setting aside a verdict in his favor.   The only grounds assigned in the motion made in the lower court to set aside the verdict were that the same was contrary to the law and the evidence, and that the defendant was a member of the petit jury in attendance upon the term of the court at which his case was tried, and had served as such petit juror with some if not all of the jurors who tried his case.   The circuit court sustained the motion upon the latter ground.   However, it is earnestly in-

sisted in this court that the judgment of the lower court is supported by either of these assignments.

In the year 1914 the defendant had a contract with the trustees of the Methodist Episcopal Church of Adamston, West Virginia, for the construction of a church building. The plaintiff and one Ransel Johnson were at that time partners engaged in the business of selling lumber and other builder's supplies. The defendant purchased from them the lumber required for the construction of this church building, the dealings between them extending from May, 1914, until May, 1915. The price at which this material was sold amounted in the aggregate to the sum of $1479.83, upon which there was paid during the time said material was being furnished the sum of $174.64, leaving a balance of $1305.19. The building was completed in May or June, 1915, and at that time the church trustees were indebted to the defendant in the sum of about seventeen hundred dollars. The Johnson & Garrett Lumber Company, which was the name of the partnership composed of the plaintiff and Ransel Johnson, desired to have their debt for material they had furnished paid. It appears that it had come to their attention that the church trustees had arranged to borrow three thousand dollars to pay for the construction of the building and any other indebtedness they might owe. They applied to the defendant for payment of the amount, but he was unable to make such payment, and they then requested him to give them an order on the church trustees for the amount of their account. He declined to give this order at first, informing them that he could collect the money himself and pay his own debts, as well as they could. It is apparent, however, that they did not have as much confidence in the defendant's solvency as they had in the solvency of the church trustees, and they insisted that he give them an order to the trustees. They made several applications to the defendant for it, and told him and his agent that if he would give them the order they would collect the money. He thereupon executed an order to the trustees of the church directing them to pay to Johnson & Garrett the sum of $1296.49; this being the amount which the statement furnished by one of the members of that firm showed was the balance, instead of

$1305.19, the actual balance. This order was accepted by the church trustees and delivered to Johnson & Garrett. Shortly thereafter Johnson & Garrett dissolved partnership, Garrett disposing of his interest in the business to Johnson for the sum of nine thousand dollars, which was to be paid partly in money, and partly by the transfer to him of certain obligations due the firm, among which was this order of the trustees of the Adamston church for $1296.49. After giving this order the defendant settled with the trustees of the church for the balance due him, giving the church trustees credit for the amount of the order, and receiving payment of the balance. Johnson & Garrett likewise credited the defendant on their books with the amount of the order and charged it to their bills receivable account. No demand was made upon the defendant for this debt until something like a year after the order had been given and accepted when, upon the failure of the church trustees to make settlement of it, the plaintiff in this suit demanded the amount of the defendant. The defendant refused to pay the same, upon the ground that the acceptance of the order under the arrangement between him and Johnson & Garrett was an extinguishment of the debt as far as he was concerned. This suit was thereupon brought by Garrett as the assignee of Johnson & Garrett upon the original account, and the trial thereof resulted in a verdict in favor of the defendant. Does the evidence support this verdict? It is quite well settled that the giving of a note by a debtor to his creditor for an amount due is presumptively only a conditional payment of such amount, and this is true, whether the note given was the debtor's own note, or the note of a third party. It is likewise true that an order drawn on a third party, given in payment of such amount, and accepted by such third party, is only a conditional payment or collateral security for the original debt, in the absence of an agreement that the giving of such order shall have a different effect. *Miller* v. *Miller,* 8 W. Va. 542-550; *Dunlap's Ex'rs* v. *Shanklin, Ex'r,* 10 W. Va. 662; *Feamster* v. *Withrow,* 12 W. Va. 611-649; *Sayre* v. *King,* 17 W. Va. 562; *Hoge* v. *Vintroux,* 21 W. Va. 1; *Bank* v. *Good,* 21 W. Va. 455-464; *Hess* v. *Dille,* 23 W. Va. 90; *Bank* v. *Handley,* 48 W. Va. 690-701. The

doctrine of these cases is that in order that a bill or note given for a debt shall have the effect of discharging the debt, it must be so agreed between the parties. The language used in most of them is that there must be an express agreement, to that effect. Of course there must be an express agreement, for without the expression of any agreement the giving of such note or bill is impliedly only a conditional payment or satisfaction, but these cases do not hold that such express agreement is not to be interpreted by the same rules governing the construction of other contracts. On the other hand it is quite well settled by the authorities that where there is an agreement or understanding between the parties at the time of the delivery of such bill or note, in interpreting or construing it the same rules of construction will be applied as in the interpretation of any other contract. 30 Cyc. 1199; 22. Am. & Eng. Enc. of Law, 552-563; 2 Daniel on Negotiable Instruments, § 1267; 2 Parsons on Notes & Bills, p. 158 &c. Many of the authorities use the language that in order to make the giving of such a bill or order an absolute payment. of the pre-existing debt, there must be an express agreement to that effect; others that there must be a special agreement to that effect; and still others that there must be an understanding to that effect; and from this difference of language used by the courts some of the text writers conclude that. there is a real difference in the holding in this regard. An analysis of the cases, however, discloses that this difference is. more apparent than real. What they all mean is that the taking of such a bill or note by the creditor is not a novation or. extinguishment of the original debt, unless the parties agree at the time that it shall be so. See authorities above cited, and *The Kimball,* 3 Wall. 37; *Lyman* v. *The Bank of the United States,* 12 Howard, 225; *Blair & Hoge* v. *Wilson,* 28 Gratt. 165; *Morriss* v. *Harveys,* 75 Va. 726; *Glenn* v. *Smith,* 2 Gill & Johnson (Md.) 493; *Bank* v. *Bornman,* 124 Ill. 200. Many more authorities might be cited, but this doctrine seems to be universally recognized in this country, except in Massachusetts where it has been held that the giving of such a note or other security for a pre-existing debt is *prima facie* a discharge of the pre-existing debt. In this case it will be ob-

served that there was more than the simple giving of the order. The order was given at the repeated request and insistence of the creditors, and only upon their declaration that they would collect the money. The solution of the question involved here turns upon what the parties meant at the time by this undertaking. The defendant, of course, contends that when he gave this order to his creditors after their repeated demands therefor, and upon their undertaking to collect the money, there was an agreement upon their part to relieve him of the debt, and to take the acceptors of the order therefor. On the other hand, the plaintiff claims that the language used had no such meaning. If the creditors by the language used meant to make their obligation to collect the money absolute, then of course they discharged the defendant, because the collection of the money would be a satisfaction of the debt. This language will bear that construction. In fact, it is the exact meaning of the language used if we construe the words by themselves, but as we said before, in construing this contract, as in all other contracts where the language used by the parties may be susceptible of more than one construction, it is always proper and in fact incumbent upon the courts to look to the conditions which surrounded the parties at the time the contract was made, and as far as possible to assume the exact position of the parties in order that it may be determined what was the meaning of the language used in the agreement. It is also fundamental that in the interpretation of such contracts the acts of the parties done under them furnish valuable assistance in determining what the parties really intended at the time the language was used. In the interpretation of all contracts the purpose is to arrive at the intention of the parties. Of course, when the language used is clear, unambiguous and certain in its terms, the parties will not be allowed to give to it a different meaning from that which it would ordinarily have. The court below very carefully submitted to the jury this question of determining the exact intent of the parties to this contract at the time it was made, and there is no complaint that the question was not properly submitted and the jury properly instructed, the contention being that the evidence did not justify any other

finding than one for the plaintiff. When we consider that the language used, if taken in a literal sense, would have the effect of relieving the defendant from liability; that the creditors in this case were anxious and insistent on obtaining this order, it being apparent that they had much greater faith in the ability of the church trustees to pay than they did in the ability of the defendant; that the defendant refused to give the order until the creditors declared that they would collect the money if an order was given; that immediately upon the order being given the defendant in making his settlement with the church trustees no longer considered them his debtor to this extent, and the creditors credited this amount on their books to his account, and for a year thereafter made no demand upon him for the money; that in the assignment of the debt of the partnership to the plaintiff in this suit no reference is made to it as a debt of the defendant, but only as an order of the church trustees, we think that the jury was entirely justified in arriving at the verdict rendered by it in this case. In fact, it occurs to us that the language used by the parties themselves at the time, taken in connection with the conditions which sourrounded them at that time, and their subsequent acts and conduct in relation thereto, leaves little room to doubt that at the time this order was given the parties intended that the defendant should be discharged from liability.

But the plaintiff says that the court below properly set aside the verdict because the jury failed to allow him at least the sum of $8.70, the difference between the actual amount of the account of the firm of Johnson & Garrett and the amount of the order given by the defendant. It appears that at the time the order was given a mistake was made in the amount of the account. Both parties, it is admitted, thought the order was for the full amount, and it turned out subsequently that it was for a less amount. It suffices to say in regard to this contention that if there is anything due by the defendant on this account aside from the amount represented in the order, it is due to the other member of the firm and not to the plaintiff in this suit. The contract between the partners is introduced in evidence, and it shows clearly and distinctly

that the plaintiff, for the consideration of nine thousand dollars, transferred his interest in the firm to his partner, and it sets out how this nine thousand dollars is paid. Among the items taken as part payment on the nine thousand dollars is the order upon the church trustees. No mention is made of any amount due by the defendant. It cannot be contended that this balance of $8.70 was included, for that would increase the amount which the plaintiff would get for his interest in the business to $9008.70 instead of $9000.00, as mentioned in the agreement. Clearly if this balance was not settled at the time the order was given it does not belong to the plaintiff in this case.

But it is contended that the court below was justified in setting aside the jury's verdict, for the reason that the defendant was one of the petit jurors attending the circuit court of Harrison county during the term at which this case was tried, and that he sat on other cases with at least some of the jurors who tried this case. None of the jurors empaneled in the trial of this case were challenged for this reason, nor is it shown in the record whether the plaintiff knew of this fact before proceeding with the trial. In fact, no affidavits are filed to support the motion, and the only way this fact appears in the record is by the certificate of the judge in the bill of exceptions. The defendant insists that while § 28, ch. 116 of the Code, which provides that: ''No person shall serve as a juror, except in trials for felony, at any term of a court during which he has any matter of fact to be tried by a jury, which shall have been, or is expected to be tried during the same term,'' disqualified the defendant for jury service at the term of court at which his case was tried, the fact that he did serve contrary to the provisions of that statute would not be ground for challenging the other jurors when they were called to try a case in which he was a party. The evident purpose of the legislature in passing this act was to prevent a combination between or among litigants having cases to be tried who might be called for jury service. It was considered, and no doubt wisely, that if parties whose cases were to be tried at a given term of court were allowed to be jurors at that term, while one could not sit in his own case, the fact that

he was a juror would influence other jurors having cases to be tried to render a favorable verdict, with the hope that such action would be influential in securing the same consideration for themselves. Then, too, the legislature no doubt considered that one who was attending court with a case to be tried before a jury would have his attention more or less centered upon his own case, and would not be in a position to give to the other matters that might come before him as a juror the attention which they required. It might be said also that one serving as a juror during a term of court is in many cases thrown into intimate relations with his fellows, and such recent intimate relations might have undue influence upon the other jurors with whom he had been serving when such other jurors came to sit on his case. When we consider all of the reasons which likely actuated the legislature in passing the provision, we are of the opinion that where a litigant serves on .the petit jury in the circuit court, at a term at which he has a case to be tried by a jury, all of the other jurors with whom he has been serving are incompetent to sit in the trial of his case. Section 19 of chapter 116 provides: ''No irregularity in any writ of venire facias, or in the drawing, summoning, or impaneling of jurors, shall be sufficient to set aside a verdict, unless the party making the objection was injured by the irregularity, or unless the objection was made before the swearing of the jury.'' Application of this section has been made in a number of cases, and notably in the case of *Beck* v. *Thompson,* 31 W. Va. 459. The conclusion reached by the court in that case, and that conclusion has been approved in a number of cases since that time, is that in order to take advantage of a disqualification of a member of the petit jury the party asserting it must do so before the jury is sworn, or failing in this he must show that he did not know of, and could not by the exercise of ordinary diligence have discovered, the disqualification before the jury was sworn, and further that he was prejudiced because of the service of such disqualified juror. See also *State* v. *Greer,* 22 W. Va. 800. The rule is that to set aside a verdict upon the ground of the disqualification of a juror, it must be shown affirmatively that the party making the motion did not know

of the disqualification before the jury was sworn; that he could not by the use of ordinary diligence have discovered this disqualification; and even if he does show these things he has to go further and show affirmatively that he was prejudiced because such juror sat in his case; and in the case of *Beck* v. *Thompson* it is held that the evidence to show such prejudice must be introduced upon the hearing upon the motion. The court cannot look to the evidence introduced before the jury, but the party seeking to set aside the verdict must offer affidavits or other evidence before the court on the hearing of the motion showing how he was prejudiced by reason of the fact that a disqualified juror or jurors sat in his case. In this case the plaintiff did not even file his affidavit showing that he did not know of the disqualification of these jurors before they were sworn, or that he could not have discovered it by the exercise of ordinary diligence. In fact, the judge of the court certifies in the bill of exceptions that presumptively the plaintiff did know before the jury was sworn the facts which he now claims disqualifies the jury from sitting in his case, and it is hard to see how he could have made an affidavit that he could not have discovered this disqualification by the exercise of ordinary diligence, because the slightest examination of the public records would have informed him thereof, nor does he attempt to show in any way that the things which he claims disqualified these jurors tended to produce a different verdict from what would have been rendered had no such disqualification existed. We are of opinion that there was no merit in this ground for setting aside the verdict.

But it is argued that inasmuch as the court below set the verdict aside its action will not be disturbed by this court. Ordinarily it is true that where the court below sets aside a verdict dependent upon the weight of evidence, or upon conflicting evidence, for the reason that the evidence preponderates against the verdict, this court will not disturb such finding, but in this case the court below certifies that he set this verdict aside for the reason that the defendant was a juror and sat with some of the jurors who tried his case in the trial of other cases at that term of the court. While the court be-

low has large discretion in setting aside verdicts, still it is a sound judicial discretion, and where as in this case the verdict is set aside because of a matter not depending upon a conflicting state of facts, but simply upon the question of the proper application of the law to conceded facts, such action of the court will not be approved when this court finds that the lower court made an improper application of the law to such conceded facts. *Wilson* v. *Johnson*, 72 W. Va. 742.

It follows from what we have said that the judgment of the circuit court of Harrison county setting aside the verdict of the jury will be reversed, the verdict reinstated and judgment rendered thereon for the defendant.

*Reversed, judgment for defendant.*