STATE OF WEST VIRGINIA, *ex rel.* DEPARTMENT OF
UNEMPLOYMENT COMPENSATION, *etc.*

*v.*

CONTINENTAL CASUALTY COMPANY

(No. 9848)

Submitted April 15, 1947.  Decided May 6, 1947.

148

*Ira J. Partlow*, Attorney General, and *Leo Loeb*, for plaintiff in error.

*Steptoe & Johnson, Stanley C. Morris* and *Wilson Anderson*, for defendant in error.

HAYMOND, JUDGE:

In this action of covenant, instituted by the State of West Virginia, for the use and benefit of the Department of Unemployment Compensation by its director, as plaintiff, against Continental Casualty Company, as defendant, in the Circuit Court of Kanawha County, West Virginia, and in which the plaintiff seeks recovery upon an indemnifying bond, executed by the defendant, as surety, the Circuit Court entered a judgment in favor of the defendant. To that judgment the plaintiff obtained a writ of error to this Court. The questions presented involve the liability of the defendant on the bond.

The case was submitted to the trial court in lieu of a jury, by a stipulation of facts, upon the declaration of the plaintiff, the pleas of the defendant denying liability on the bond, and the general replication of the plaintiff. On December 20, 1945, the court, after overruling the motion

of the plaintiff to set aside its finding against the plaintiff, entered the judgment in favor of the defendant of which the plaintiff complains in this Court.

The condition of the bond executed by the defendant, dated June 15, 1941, and which was in effect when the losses alleged to have been sustained by the plaintiff occurred, in substance, is to pay State of West Virginia, Department of Unemployment Compensation, as employer, for loss of money or property, including that for which the employer is legally responsible, sustained through fraud, dishonesty, forgery, larceny, theft, embezzlement, wrongful abstraction, misapplication, misappropriation, or any other dishonest or criminal act or omission, directly or through connivance with others, on the part of any of the employees named in the schedule attached to, and made a part of, the bond while in any position or at any location in the employ of the employer. The schedule referred to included Charles Summers, an employee of the department occupying the position of junior accountant, for any default by him to the limit of $2,000.00, the amount sought to be recovered by the plaintiff, and was effective, as a part of the bond, from and after June 15, 1941. By an attached rider, effective June 15, 1941, the bond was amended to include the requirements of Section 3, Article 2, Chapter 6, Code of West Virginia, 1931, which declares that, unless otherwise provided, every bond required by any statute of this State of any person undertaking an office or employment shall be conditioned upon the faithful discharge by the principal of the duties of his office or employment, and upon accounting for and paying over, as required by law, all moneys which may come into his possession by virtue of the office or employment, and that the liability of the principal and his sureties upon such bond shall extend to all moneys received by the principal by virtue of his office or employment under the laws in effect at the time of the execution of the bond, and to all moneys which shall come into his possession by virtue of his office or employment under the provisions of any law enacted dur-

ing his continuance in such office or employment. The bond, as amended, was approved by the Governor and the Attorney General of this State and was duly filed in the office of the Secretary of State.

On June 28, 1941, Utilities Coal Company, an employer subject to the Unemployment Compensation Law of this State, following a custom which obtained in the Department of Unemployment Compensation between the department and responsible employers, sent its check, payable to the department, for $900.65, and on October 31, 1941, a second check, also payable to the department, for $983.77. Those checks were sent for the purpose of paying its contribution liabilities to the unemployment compensation fund, required by the Unemployment Compensation Law, for the months of May and September, 1941, respectively. The director is the custodian of this fund and is required to administer it in the manner provided by the statute, Section 2, Article 8, Chapter 1, Acts of the Legislature of 1936, Second Extraordinary Session. On June 28, 1941, another such employer, Buffalo-Winifrede Coal Company, sent its check, payable to the department, for $408.25, for the purpose of paying its contribution liability, under the Unemployment Compensation Law, for the month of May, 1941. Each of the three checks was drawn upon the same bank and was mailed to the department on the date it was issued. In January, 1942, the department notified each employer that it was delinquent in the payment of its contribution for the periods which the checks were intended to cover.

An investigation followed. It resulted in the discovery that Summers had obtained the checks, caused the payee in each to be altered, and received the proceeds of each check, by endorsing the name of each substituted payee. Notice of this fraud was given promptly to the bank upon which the checks were drawn, and thereafter Summers was convicted and sentenced to imprisonment in the state penitentiary upon an indictment for forgery. He did not account to the department for any of the sums of money

aggregating $2,292.67 which came into his possession from his fraudulent and unlawful use of the checks. The proceeds of the checks have not been recovered from him. By reason of the misappropriation by Summers of the moneys obtained by him upon the altered checks the employers were not given credit by the department upon their liabilities to it in the amounts represented by the checks.

Upon discovery of the foregoing facts, the plaintiff gave due notice to the defendant and filed with it written proof of the alleged loss. The defendant denied liability on the bond, and this action was instituted within the time limit specified in the bond.

Authenticated copies of the bond, the schedule, and the riders, and photostatic copies of the checks, are in evidence as part of the stipulation of facts.

The plaintiff assigns as error the action of the trial court: (1) In finding against the plaintiff and in favor of the defendant; (2) in overruling the motion of the plaintiff to set aside the finding against it as contrary to the law and the evidence and to award the plaintiff a new trial; (3) in failing to find that the plaintiff was entitled to recover from the defendant the sum of $2,000.00; and (4) in finding for the defendant.

Numerous grounds are urged in support of these assignments of error. They may all be summarized and grouped under these heads: (a) Contributions to the unemployment compensation fund are payable by check; (b) the alterations and the forgeries by Summers of the checks and his misappropriation of their proceeds constitute a breach of the conditions of the bond which renders the defendant liable as his surety to the full extent of its coverage; (c) Summers, the defaulting employee, whose fraudulent acts occurred while the bond was in force, was included in its coverage within the limit of $2,000.00; (d) the express purpose of the bond is to assure the payment, to the State, of all moneys, securities and other property of

the State, received by him, as such employee by virtue of his employment; (e) the terms of the bond, within specified limits, provide against loss of money or property sustained by the department because of the dishonest or criminal acts of its employee, Summers, while in any position or at any location in the employ of the department; and (f) the undertaking of the defendant, as surety on the bond, is original and primary and is not conditioned upon prior resort to other persons or to other remedies.

The defendant vigorously urges and relies upon its contentions that the method used by the employers and permitted by the department in undertaking to make payment of the contributions by checks was not authorized by law, and that no loss, within the coverage of the bond, has been sustained or incurred by the department. It insists that these defenses are a complete bar to any recovery on the bond. In denying any liability it concedes, however, that if loss to the department has occurred by reason of the dishonest or criminal acts of Summers, and that if his conduct constituted a breach of the conditions of the bond which renders it liable, its liability is orginial and primary and is not conditioned upon prior resort to other persons or to other remedies.

The vital questions are whether the dishonest and criminal conduct of Summers, the employee of the plaintiff, in unlawfully appropriating to his own use the money which he obtained by his fraudulent disposition of the checks, resulted in any loss to the department of money or property of the department, or for which it is legally responsible, and whether such conduct upon the part of Summers amounted to a breach of the conditions of the bond which renders the defendant liable as his surety to the extent of the limit of $2,000.00.

The Unemployment Compensation Law of this State requires employers subject to its provisions to pay their contributions to the unemployment compensation fund created by the statute. This fund is administered by the Director of the Department of Unemployment Compen-

sation in the manner provided by the statute. Section 5, Article 5, and Sections 1 and 2, Article 8, Chapter 1, Acts of the Legislature of West Virginia of 1936, Second Extraordinary Session. It is clear that the payments required to be made to the unemployment compensation fund by an employer subject to the statute are excise taxes. Such payments have been so denominated by this Court. *Christopher* v. *James,* 122 W. Va. 665, 12 S. E. 2d 813. See also *Carmichael* v. *Southern Coal and Coke Co.,* 301 U. S. 495, 56 S. Ct. 868, 81 L. ed. 1245; and *Beeland Wholesale Co.* v. *Kaufman,* 234 Ala. 249, 174 S. 516. That such payments are excise taxes appears to be conceded, or at least not controverted, by the plaintiff.

The law is well settled in most jurisdictions that the delivery of a check or a draft to a tax collector in payment of taxes, in the absence of a statute authorizing payment of taxes by that method, does not operate to discharge the tax unless the check or the draft is in fact paid to the tax collecting authority. *Houghton* v. *Boston,* 159 Mass. 138, 34 N. E. 93; 51 Am. Jur., Taxation, Section 950. As a general rule, taxes can be paid only in money unless the law specifically authorizes those charged with the duty of collecting taxes to accept some other form of payment. *Eggleston* v. *Plowman,* 49 S. D. 609, 207 N. W. 981, 44 A. L. R. 1234; *Judd* v. *Driver,* 1 Kan. 455. The reason for this requirement is that the collector of taxes is without power or authority to discharge the rights of the State for anything other than money. *Eggleston* v. *Plowman,* 49 S. D. 609, 207 N. W. 981, 44 A. L. R. 1234. An established custom to deliver checks for taxes to a tax collector of itself can not operate to make the checks payment of the taxes unless the checks are actually paid and the proceeds of the checks are received by the tax collector. 51 Am. Jur., Taxation, Section 950. When, however, the check given for taxes is in fact paid the payment is effective as of the time the check is received by the tax collecting authority. Payment of taxes by check is a conditional payment; but when the check is paid the payment relates back to the date of the receipt of the check. *Cantlay & Tanzola* v. *In-*

*gels,* 31 Cal. App. 2d 553, 88 P. 2d 141. The same rule applies as to the time of payment with respect to the use of a check as a method of payment in transactions between private persons. See 48 C. J., p. 618. The rule recognized by the weight of authority is that, in ordinary transactions, a check or a draft given by a debtor in payment of his indebtedness to the payee does not, unless there is an agreement, express or implied, to that effect, constitute payment of the debt. 48 C. J., p. 610. The presumption in such case is that the check or the draft is accepted on condition that it shall be paid. *Hare* v. *Connecticut Mutual Life Ins. Co.,* 114 W. Va. 679, 173 S. E. 772; *Nuzum* v. *Sheppard,* 87 W. Va. 243, 104 S. E. 587, 11 A. L. R. 1024; *Garrett* v. *Patton,* 81 W. Va. 771, 95 S. E. 437; *Cox* v. *Boone,* 8 W. Va. 500; 40 Am. Jur., Payment, Section 72.

To remove the case from the application of these well established principles, however, the plaintiff emphasizes the undisputed fact that the checks were in fact paid and their proceeds passed into the actual possession and custody of Summers by virtue of his employment as an accountant of the department, and asserts that the use of checks as a method of paying the excise taxes imposed by the Unemployment Compensation Law upon employers subject to its operation is authorized and permitted by the provisions of Section 1, Article 2, Chapter 12, Code of West Virginia, 1931.

That section of the statute employs this language: "All persons, firms or corporations shall promptly pay all amounts due from them to the State by check, draft, post-office money order or express money order payable to the State of West Virginia, and shall forward the same to the official or department, board or commission having the account on which the amount is chargeable against the payer, except as hereinafter provided. All payments shall be made in such manner that the amount of no check, draft or order aforementioned shall exceed the sum of twenty-five thousand dollars." This provision, in substantially the form just quoted, was first enacted into the

law of this State in 1925. Section 2, Chapter 8, Acts of the Legislature of 1925, Regular Session. Sections 2 and 3, Article 2, Chapter 12, Code of West Virginia, 1931, deal with the payment of these amounts by the collectors into the State Treasury and their disposition by the State Treasurer. The Legislature of 1925 also enacted Section 13 of Chapter 1 and Section 11 of Chapter 2, Acts of the Legislature of 1925, Extraordinary Session, which provide for the payment of certain designated taxes by certified check, cashier's check, bank draft, money order or certificate of deposit, payable to the State Tax Commissioner. By statute enacted in 1936, Sections 1 and 2, Article 8, Chapter 1, Acts of the Legislature of 1936, Second Extraordinary Session, the unemployment compensation fund was established and its custody and its administration were committed to the Director of the Department of Unemployment Compensation.

The defendant also points out the difference between the provisions of Sections 2 and 3, Article 2, Chapter 12, Code of West Virginia, 1931, which regulate the disposition of the amounts referred to in Section 1 and the provisions of Article 8, Chapter 1, Acts of the Legislature of 1936, Second Extraordinary Session, which commit the unemployment compensation fund to the custody of the director of the department and require the deposit of certain moneys in the designated accounts of that fund with the Secretary of the Treasury of the United States. The contention of the defendant is that these differences, the enactment of the two above mentioned sections which specifically refer to the method of payment of certain designated taxes, and the absence of any reference to taxes in Section 1, Article 2, Chapter 12, Code of West Virginia, 1931, when considered together and in the light of their legislative background, indicate that the Legislature did not intend Section 1, Article 2, Chapter 12, Code of West Virginia, 1931, to apply to or authorize the payment of taxes by any of the methods mentioned in that section. It is also the contention of the defendant that the action of the Legislature of 1947, in amending and reenacting Sec-

tion 1, Article 2, Chapter 12, Code of West Virginia, 1931, by the passage of Engrossed Senate Bill No. 68, on February 20, 1947, effective from that date, which specifically includes taxes and authorizes their payment by check, bank draft, certified check, cashier's check, post office money order or express money order, amounts to an interpretation by the Legislature that Section 1, before it was so amended and reenacted, did not relate to the use of checks in the payment of any tax.

Both these contentions are unsound and each of them must be rejected.

Section 1, Article 2, Chapter 12, Code of West Virginia, 1931, before its amendment and reenactment by the Legislature of 1947, was in effect when the checks involved in this action were issued in 1941. Its language is clear and free from any ambiguity. It is general and comprehensive in character. When a statute is clear and unambiguous, and the legislative intent is plain, the statute should not be interpreted by the courts. 50 Am. Jur., Statutes, Section 225. See *State ex rel. McLaughlin* v. *Morris,* 128 W. Va. 456, 37 S. E. 2d 85. In such case the duty of the courts is not to construe but to apply the statute. In applying the statute its words should be given their ordinary acceptance and significance and the meaning commonly attributed to them. 50 Am. Jur., Section 225. See *Moran* v. *Leccony Smokeless Coal Co.,* 122 W. Va. 405, 10 S. E. 2d 578, 137 A. L. R. 1007.

When a court is called upon to construe an ambiguous statute, consideration and weight should be given to the construction placed upon the statute by the Legislature. 59 C. J., p. 1033. In the construction of a statute of doubtful or uncertain meaning, however, the interpretation placed upon it by the Legislature ordinarily does not control. The Court, not the Legislature, exercises final authority in the construction of statutes. 59 C. J., p. 1034.

The language of Section 1, Article 2, Chapter 12, Code of West Virginia, 1931, applies to and permits the use of

checks as a method of paying the excise taxes in the form of contributions required of an employer by the Unemployment Compensation Law of this State. That statute, properly applied, authorizes an employer, subject to the Unemployment Compensation Law, to use checks as a means of making the payments due from him to the Department of Unemployment Compensation, provided no check shall exceed in amount the sum of twenty five thousand dollars. Of course the tax is not paid, when the method of payment is by a check, unless the check is in fact paid and its proceeds are actually received by a proper representative of the department. When, however, a check given for an obligation is paid in due course, payment of the obligation is effected as of the delivery of the check to the payee. These requirements were satisfied in this case. The checks were paid and the only reasonable inference from the undisputed facts disclosed by the stipulation is that Summers received the checks and their proceeds by virtue of his employment as an accountant of the department and that he had authority as its employee to handle the checks and to collect their proceeds in its behalf.

The different statutory requirements with respect to the use and the disposition of the funds mentioned in Sections 2 and 3, Article 2, Chapter 12, Code of West Virginia, 1931, and the method of administering the unemployment compensation fund as provided by Article 8, Chapter 1, Acts of the Legislature of 1936, Second Extraordinary Session, do not affect the method of payment by check as provided and authorized by Section 1, Article 2, Chapter 12, Code of West Virginia, 1931. The manner of payment and the subsequent use, administration and disposition of the various funds by the different officials and departments of the State, are separate and distinct matters with the latter of which the taxpayer is not concerned. The employers who issued the three checks had the right to undertake the payment of the contributions due from them to the unemployment compensation department by check, as that method was authorized and permitted by

the provisions of Section 1, Article 2, Chapter 12, Code of West Virginia, 1931. Having used the means provided by the statute they are entitled to the protection which it affords. Though the checks were payable to the Department of Unemployment Compensation instead of to the State of West Virginia, as the statute directs, the department being a subdivision or an agency of the State, the giving of the checks in the form in which they were issued was a substantial compliance with that requirement of the statute.

The provisions of the statute having been complied with, the checks having been paid, and the proceeds of the checks having come into the custody of an employee of the department who, by virtue of his employment, was authorized to receive them, the liability of the employers to the department for the payment of the contributions in the amounts represented by the checks has been fully satisfied and discharged. Their obligations in that respect have been paid in full, and any claim of the department, notwithstanding its failure or refusal to credit the amounts of the checks to their accounts, or its contention that the contributions have not been paid, has been legally satisfied and extinguished.

It was the plain duty of Summers, the employee of the department, to account to it for the proceeds of the checks. His failure to account and his dishonest and criminal conduct in appropriating the funds which he obtained by his fraudulent use of the checks resulted in a loss to the department of $2,292.67, the aggregate amount of the three checks. The foregoing acts and omissions upon his part also constituted a positive breach of the conditions of the bond, the provisions of which, as amended by the rider previously mentioned, indemnify the State of West Virginia, Department of Unemployment Compensation, against loss of money or property sustained through fraud or any other dishonest or criminal act or omission by him and by reason of the failure of its employee, a principal in the bond, faithfully to discharge the duties of his employment and to account for and to pay over, as required

by law, all moneys which came into his possession by virtue of his employment. The undisputed facts which appear from the stipulation clearly establish the foregoing breach of the conditions of the bond and the resultant loss to the plaintiff in the amount of $2,292.67.

By reason of this loss, which exceeds the penalty of the bond, and the breach of its conditions by its employee, the plaintiff, upon the facts shown by the record, is entitled to recover in this action from the defendant, as surety, the amount of $2,000.00, the limit of the coverage provided by the bond.

The action of the Circuit Court of Kanawha County in rendering the judgment of December 20, 1945, in favor of the defendant, was erroneous. For that reason the judgment is reversed, the finding in favor of the defendant is set aside, and a new trial is awarded the plaintiff.

*Reversed and remanded.*