NATIONWIDE MUTUAL INSURANCE COMPANY, *a Corporation*

*v.*

GLENN L. SMITH, *et al.*

(No. 12869)

Submitted February 10, 1970.    Decided March 10, 1970.

*Jackson, Kelly, Holt & O'Farrell, Edward W. Rugeley, Jr., Forrest H. Roles,* for appellant.

No appearances for appellees.

HAYMOND, JUDGE:

This is a declaratory judgment action instituted in the Circuit Court of Kanawha County in which the plaintiff, Nationwide Mutual Insurance Company, a corporation, herein sometimes referred to as Nationwide or the company, seeks to have determined the relative rights and duties of the plaintiff and the defendants, Glenn L. Smith and Carolyn J. Smith, herein sometimes referred to as the Smiths, in two policies of liability insurance issued to Glenn L. Smith, the named insured, by the plaintiff, and Fred A. Kautz and Suewanne S. Kautz, herein sometimes referred to as the Kautzes, and particularly to obtain a declaration that the plaintiff owed no duties and incurred no liability to the Smiths or the Kautzes under and by virtue of either of the policies which are herein sometimes respectively identified by the numbers 872 and 800.

The case was tried on March 4, 1968, before the Circuit Court of Kanawha County in lieu of a jury. At the conclusion of the evidence the defendants made a motion for a directed verdict in their favor. The evidence on which it was based was introduced by the plaintiff and consisted of the testimony of the defendants Carolyn J. Smith and Glenn L. Smith, as adverse witnesses, R. E. Meyer, an employee of the Bank of Dunbar, a depository

of the Smiths, and James R. Lipford, Jerry C. Allen and Bill Goodwin, employees of the plaintiff, and certain exhibits, including a dishonored check for $35.00 payable to the plaintiff and drawn by the defendant Carolyn J. Smith, ledger sheets of the account of the defendants in the Bank of Dunbar, cancellation notices, and the policies of insurance on which this action is based.

The circuit court sustained the motion and by final judgment rendered November 7, 1968 held, for reasons set forth in a memorandum of opinion dated June 18, 1968 which was filed as a part of the record in this action, that Policy No. 800 was valid and effective from the date of issuance and that it was supported by valid consideration and was not effectively cancelled prior to the date of a collision which occurred on April 17, 1965, between an automobile described in the policies, owned by the defendant Glenn L. Smith and driven by the defendant Carolyn J. Smith, and an automobile owned by the defendant Fred A. Kautz and driven by his wife the defendant Suewanne S. Kautz.

From that judgment this appeal was granted September 22, 1969, upon the application of the plaintiff, and on February 3, 1970 this action was submitted for decision by leave of this Court upon the plaintiff's motion to reverse, and the brief and the oral argument of counsel for the plaintiff. The defendants filed no brief and made no appearance upon this appeal in this Court.

On or about December 30, 1964, the plaintiff, by its agent Michaels, issued its policy of automobile liability insurance to the defendant Glenn L. Smith as the named insured. The policy numbered 91 290-872, sometimes referred to as Policy 872, afforded automobile liability coverage for a period of six months from December 30, 1964 to June 30, 1965. It appears that it was the intent of the parties that payment of $35.00 of the total premium of $67.50 was to be made at the time the policy was delivered and the balance of $32.50 should be paid at some later date. This appears from the statement of the

defendant Glenn L. Smith that he thought he made a payment at the time the policy was issued and also from the declarations in the policy which state that the amount collected was $35.00 and also that the sum of $67.50 was paid. The defendant Carolyn J. Smith, by the name of Jean Smith, issued and delivered to the agent a check for $35.00, payable to the company. When issued the check was not dated but when it was received at the home office of the company in Columbus, the date of January 6, 1965 was placed on the check. The check was deposited by the company and when it was received at the Bank of Dunbar, on which it was drawn and in which the defendants Glenn L. Smith and Carolyn J. Smith had a joint account, payment was refused by the bank for lack of sufficient funds and the check was returned by the bank on January 14, 1965.

On February 2, 1965 the plaintiff was notified by the bank in which it had deposited the check that payment of the check had been refused by the bank on which it was drawn. On February 4, 1965, the plaintiff wrote the defendant Glenn L. Smith and informed him that the check in payment of the premium had been returned by the bank and in the letter said: "We are sure you want to continue this protection and we are keeping your insurance in force for a few more days so that you may have time to send us a valid payment." The letter also gave notice that the policy was cancelled as of February 18, 1965 and stated that if payment was made before that date the cancellation notice would be withdrawn. Upon receipt of that letter the defendant Carolyn J. Smith placed a notation on the letter requesting the plaintiff to send the check to the bank again. This was done and payment of the check was again refused by the bank. It appears that the check was presented for payment three times and that in each instance payment was refused for lack of sufficient funds.

On March 18, 1965 the plaintiff wrote the defendant Glenn L. Smith a second letter which advised him that

the check given in payment of the premium had been returned by the bank on which it was drawn. That letter contained this statement: "We are sure you want to continue this protection and we are keeping your insurance in force for a few more days so that you may have time to send us a valid payment." It also gave notice that the policy was cancelled as of April 2, 1965 but stated that if payment was received before that time the cancellation notice would be withdrawn. The letter contained this additional notation: "We redeposited the check as you requested, but the bank returned it again marked 'Non Sufficient Funds'. Please send valid payment. Thanks." The defendant Glenn L. Smith stated, in effect, that he did not remember receiving a second letter from the plaintiff and the defendant Carolyn J. Smith stated that she did not think she got the second letter but that she was not positive about it. It appears from the evidence, however, that the second letter was duly mailed to Glenn L. Smith by the plaintiff.

On or about April 1, 1965, Lipford, another agent of the plaintiff, who was acquainted with the Smiths, discussed the matter of their insurance with the defendant Glenn L. Smith and Michaels, who at that time was engaged in terminating his agency with the plaintiff. With the knowledge and consent of Michaels, Lipford got in touch with the Smiths with the result that he issued and delivered to the defendant Glenn L. Smith, the named insured, a second policy which Lipford characterized as a transfer policy. That policy is numbered 91 290-800 and is referred to as Policy 800. Lipford testified that it replaced the original policy and, contingent upon the premium being paid, was in force and covered the period of three months from April 1, 1965 to June 30, 1965, which was the termination date of the original policy. Lipford also testified that he had a conversation with the defendant Glenn L. Smith about the premium and that in the conversation he asked Smith if the premium had been paid and Smith informed him that it

had been paid; and that when he wrote the policy he was advised by Smith that the premium for the period ending June 30 had been paid. The policy declarations of Policy 800 contained the premium notation "Pd. $67.50," which was the amount of the total premium.

On April 17, 1965, the automobile owned by the defendant Glenn L. Smith, mentioned in both policies, while driven by the defendant Carolyn J. Smith, collided with an automobile owned by the defendant Fred A. Kautz, driven by his wife, the defendant Suewanne Kautz, who claims to have sustained injuries in the collision.

The defendants Glenn L. Smith and Carolyn J. Smith notified Lipford on April 17, 1965 of the automobile accident and Lipford promptly reported the accident to the claims department of the plaintiff which denied liability and informed the Smiths that no coverage existed under either policy. In a letter dated April 22, 1965, to the defendant Glenn L. Smith, the plaintiff by its agent Bill Goodwin, informed the defendant Carolyn J. Smith that as stated in the letter of March 18, 1965, the insurance coverage under Policy 91 290-872 terminated as of April 2, 1965; that the original check was deposited and redeposited on two occasions, once at her request, but that a valid payment was not received; that Policy 90 280-800 was issued as a transfer policy and as no money was collected on that policy or the original policy no coverage was afforded.

The plaintiff seeks reversal of the final judgment of the circuit court and assigns these errors: The issuance of Policy 800 was induced by fraud of the defendant Glenn L. Smith; it came into existence by mutual mistake; its validity was contingent upon the validity of Policy 872, which was cancelled and became null and void as of the date of the issuance of Policy 800; and Policy 800 was cancelled as of April 2, 1965 and was not based upon any valid consideration.

It is undisputed that no part of the premium for either

policy has ever been paid to the plaintiff by the defendants Glenn L. Smith and Carolyn J. Smith, or by either of them.

It is manifest that the acceptance of the check drawn by the defendant Carolyn J. Smith for $35.00 in payment of the amount required when Policy 872 was issued was a conditional payment of that amount and that payment was conditioned upon the integrity of the check. The rule adhered to by this Court and recognized by the weight of authority concerning the delivery of a check is that, in ordinary transactions, a check given by the debtor in payment of his indebtedness to the payee does not constitute payment of the debt unless there is an agreement, express or implied, that the check constitutes such payment. *Aetna Casualty and Surety Company* v. *Federal Insurance Company of New York,* 148 W. Va. 160, 133 S. E.2d 770; *State* v. *Stout,* 142 W. Va. 182, 95 S. E.2d 639, 59 A.L.R. 2d 1154; *State ex rel. Department of Unemployment Compensation* v. *Continental Casualty Company,* 130 W. Va. 147, 42 S. E.2d 820; *Hare* v. *Connecticut Mutual Life Insurance Company,* 114 W. Va. 679, 173 S. E. 772; *Nuzum* v. *Sheppard,* 87 W. Va. 243, 104 S. E. 587, 11 A.L.R. 1024; *Garrett* v. *Patton,* 81 W. Va. 771, 95 S. E. 437; *Sayre* v. *King,* 17 W. Va. 562; *Cox* v. *Boone,* 8 W. Va. 500, 23 Am. Rep. 627; 43 Am. Jur. 2d, Insurance, Section 565; 70 C.J.S., Payment, Section 24 (b) ; 40 Am. Jur., Payment, Section 72.

Annotation 3, 50 A.L.R. 2d 639, citing decisions of appellate courts of a large number of states, contains this statement: "It is a generally accepted rule that where a check is taken for an insurance premium, it will ordinarily be assumed that the acceptance was conditioned upon the check's being honored upon proper presentation, so that if payment is refused, and in the meantime the period in which payment could be made has elapsed, the insurer may declare the policy forfeited for nonpayment." In *Hare* v. *Connecticut Mutual Life Insurance Company,* 114 W. Va. 679, 173 S. E. 772, the syllabus is: "In the

absence of a special agreement to the contrary the acceptance of a check in payment is conditional upon the integrity of the check." In *State ex rel. Department of Unemployment Compensation* v. *Continental Casualty Company,* 130 W. Va. 147, 42 S. E.2d 820, the opinion contains this language: "The rule recognized by the weight of authority is that, in ordinary transactions, a check or a draft given by a debtor in payment of his indebtedness to the payee does not, unless there is an agreement, express or implied, to that effect, constitute payment of the debt. 48 C. J., p. 610. The presumption in such case is that the check or the draft is accepted on condition that it shall be paid." It has been held that in order that a check may have the effect of payment, both the debtor and the creditor must intend that it shall discharge the indebtedness. *Ward* v. *Tadlock,* Tex. Civ. App. 183 S. W.2d 739. In *Burns* v. *Prudence Life Insurance Company,* 243 S. C. 515, 134 S. E.2d 769, the court said: "As a general rule, in the absence of an express or an implied agreement to the contrary, a check does not constitute payment unless it produces payment in cash, the presumption being that the check is accepted on condition that it be paid." It is clear that there was no agreement, express or implied, between the parties that the check issued by the defendant Carolyn J. Smith and the acceptance of the check by the plaintiff would constitute an actual payment of the premium of $35.00 which was due when the policy was delivered. The requests of the company for payment of the check and the action of the Smiths in redepositing it show beyond question that the delivery and the acceptance of the check did not constitute payment of the premium for which it was issued.

By Section 17, Article 1, Chapter 33, Code, 1931, as amended, premium is the consideration for insurance. In *Hare* v. *Connecticut Mutual Life Insurance Company,* 114 W. Va. 679, 173 S. E. 772, this Court said: "The premium is the price of the insurance and payment of the

premium is of the essence of the insurance contract. No payment—no insurance. A worthless check is not a payment of anything." In 14 Appleman, Insurance Law and Practice, Section 8144, the text, supported by numerous decisions, contains these statements: "The mere giving or sending of a worthless check to the insurer does not effect the payment of a premium; the result being, if such check is given for the first premium, that coverage never goes into effect; and if given for a subsequent premium, that the coverage is not thereby prevented from lapsing. In order for a worthless check to constitute a valid payment, it must have been unconditionally accepted as such by the insurer." In 44 C.J.S., Insurance, Section 270, the text states that "* * * the payment or agreement to pay the premium by insured is a condition precedent to, or at least concurrent with, the assuming of any liability by the insurance company." See also *Rominick* v. *Inter-Ocean Casualty Company*, 113 W. Va. 846, 169 S. E. 446; *Martin* v. *New York Life Insurance Company*, 30 N. M. 400, 234 P. 673, 40 A.L.R. 406; *Cauley* v. *General American Life Insurance Company*, 219 N. C. 398, 14 S. E.2d 39; *Brady* v. *Northwestern Masonic Aid Association*, 190 Pa. 595, 42 A. 962.

Under the foregoing authorities Policy 872 was not a valid policy when issued because of the nonpayment of premium for without the payment of the premium there was no consideration for the policy. By the terms of the policy, which are identical with those of Policy 800, the consideration for the coverage afforded by the policy and any endorsement was the payment of the stated premium. Consideration is essential to the enforceability of an insurance contract. Point 1, syllabus, *Adkins* v. *Western and Southern Indemnity Company*, 117 W. Va. 541, 186 S. E. 302; *Engelberg* v. *Home Insurance Company*, 251 N. C. 166, 110 S. E.2d 818. In the opinion in the *Engelberg* case is this pertinent language: "Plaintiff did not at any time pay the premium or any part thereof. Unless the payment of premium is waived, it is a condition

precedent to insurance coverage. *Allen* v. *National Accident & Health Co.*, 215 N. C. 70, 1 S. E.2d 94." The plaintiff's letters of February 4, 1965 and March 18, 1965 to the defendant Glenn L. Smith, stating that "We are keeping your insurance in force for a few more days so that you may have time to send us a valid payment" did not constitute a waiver of the payment of the premium which was due when the policy was issued. Waiver as generally defined is the intentional relinquishment of a known right. *Smith* v. *Bell*, 129 W. Va. 749, 41 S. E.2d 695. In Black's Law Dictionary, Fourth Edition, page 1751, waiver is stated to be "The intentional or voluntary relinquishment of a known right."

The statement in each letter was merely an offer to afford the defendants the benefit of the insurance upon the express condition that the dishonored check would be paid within a few days and with the distinct understanding that the policy was cancelled as of February 18, 1965 and as of April 2, 1965, and that if payment of the premium was made before the designated date, the cancellation would be withdrawn. If, however, the foregoing statements could be considered to be a waiver of the payment of the premium, Policy 872 was duly cancelled in the manner provided by the policy for the nonpayment of premium and was not in effect at the time of the collision between the automobile owned by the defendant Glenn L. Smith and the automobile owned by the defendant Fred A. Kautz. The plaintiff had the right to cancel the policy because it made full compliance with this cancellation provision: "The Company may cancel this policy or any coverage herein in accordance with the terms hereof by mailing to the Policyholder, even if deceased, at the address stated in the policy, a written notice stating when not less than 10 days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice."

The foregoing discussion and the authorities cited with respect to Policy 872 apply with equal effect to Policy

800 on which the liability fixed and determined by the circuit court was based. It is obvious that Policy 800 was issued and delivered by Lipford, as the agent of the plaintiff, in the belief based upon the mistaken statement of the defendant Glenn L. Smith that the premium on Policy 872 had been paid. This is supported by the premium payment notation in the policy declarations for Policy 800. In the absence of the payment of the premium which was to have been paid when the policy was delivered the policy was invalid from its inception and because of the nonpayment of the premium, which constituted lack of consideration, the policy did not at any time afford the assureds any coverage and, of course, was not in effect at the time of the automobile collision on April 17, 1965.

In view of the holding of this Court upon the controlling question of the lack of consideration for Policy 800, with the resulting lack of coverage under that policy, it is unnecessary to consider or determine the other errors assigned by the plaintiff.

For the reasons stated the motion of the plaintiff to reverse the final judgment of the circuit court is sustained, the judgment is reversed and set aside, and this action is remanded to the circuit court for such further proceedings as may be proper in conformity to the principles enunciated in this opinion.

*Reversed and remanded.*