813 F.2d 1228
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Deborah SHEPHERD, Administratrix of the Estate of Robert J.
Shepherd, deceased, Plaintiff-Appellee,
v.
QUALITY INSURANCE CO., a corporation, organized and existing
under the laws of the State of West Virginia;
Defendant-Appellant,
State Farm Mutual Automobile Insurance Company, a mutual
insurance company organized and existing under the
laws of the State of Illinois, Defendant- Appellee,
and
Lucille Ramey; Robert A. Humphreys: Cleo McKinney, Defendants.
 No. 86-1096.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 11, 1986.
Decided March 4, 1987.
 
 Before CHAPMAN and WILKINSON, Circuit Judges, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 Robert Glenn Steele (J. Greg Goodykoontz; Steptoe & Johnson, on brief), for appellant.
 William C. Garrett (Garrett, Garrett & Van Nostrand; Kenneth R. Miller; Debra K. Hodges; Furbee, Amos, Webb & Critchfield, on brief), for appellees.
 PER CURIAM:
 
 
 1
 Deborah Shepherd, Administratrix of the Estate of Robert J. Shepherd, originally brought this action for declaratory judgment against Quality Insurance Company (Quality), State Farm Mutual Automobile Insurance Company (State Farm), Lucille Ramey, Robert A. Humphreys, and Cleo McKinney to ascertain the various rights and duties of the parties, particularly whether one or more of the insurance policies issued by the defendant insurance companies would be liable to pay damages to Shepherd for an accident which caused the death of Robert J. Shepherd on October 30, 1982. Following a bench trial, the district court found that a policy issued by Quality to Robert A. Humphreys was in full force and effect at the time of the automobile accident and that Quality had primary liability coverage affecting the estate of Robert J. Shepherd pursuant to that policy. Finding that the insurance policy issued by Quality to Robert A. Humphreys expired on its own terms prior to the October 30, 1982 accident, we reverse the judgment of the district court.
 
 I.
 
 2
 On January 7, 1982, Robert A. Humphreys purchased an insurance policy on a 1977 Chevrolet Monte Carlo. The policy expressly stated that it was effective for a three-month period from January 7, 1982 through April 7, 1982. A subsequent policy was entered into for the period April 7, 1982 through July 7, 1982 and another policy was undertaken for the period July 7, 1982 through October 7, 1982.[1] Humphreys paid the appropriate premium on or before the date for each new policy. Quality Insurance agents James R. Frame and Harry F. Kyer testified that the Humphreys' policy was a "quarterly policy" that would automatically terminate at the end of the three-month term.
 
 
 3
 Following a two-day trial, the district court found that on September 14, 1982, Quality mailed to Humphreys at the address stated on the policy a notice which advised that a three-month premium payment was due on October 7, 1982. While there was testimony at trial that Humphreys received and read this notice, the record is inconclusive on this particular point. It is undisputed, however, that Humphreys did not pay the premium due on October 7, 1982 and that a letter dated October 20, 1982 advised Humphreys that his policy had expired upon nonpayment of premium on October 7, 1982.
 
 
 4
 On October 30, 1982, Robert J. Shepherd died as a result of personal injuries sustained in a single-car accident that occurred on West Virginia State Route 4, in Braxton County, West Virginia. At the time of the accident, Shepherd was traveling as a passenger in the Humphreys' vehicle. The vehicle was being operated by Humphreys' fiancee, Lucille Ramey, who was driving the vehicle with Humphreys' permission and within the scope of that permission.
 
 
 5
 The district court concluded that the Quality Insurance policy issued to Humphreys was in full force and effect on the date of the accident because W.Va.Code Sec. 33-6A-1, et seq., provided that an automobile liability insurance policy may only be terminated by cancellation or non-renewal. The district court further held that Quality had primary liability coverage pursuant to the policy issued to Humphreys and that State Farm had secondary liability coverage pursuant to the uninsured motorist provisions in the policies of insurance issued to the decedent, Robert J. Shepherd. This appeal followed.
 
 II.
 
 6
 Quality argues that the district court erred in holding that the policy issued to Humphreys was in full force and effect on the day of the accident--October 30, 1982. Quality contends that the last Humphreys' policy expired on its own terms October 7, 1982 and that no subsequent policy was contracted by Quality. Therefore, Quality maintains, the West Virginia statutes requiring notice of cancellation and non-renewal are not applicable to this case.
 
 
 7
 It is clear from the record that Humphreys himself believed that the policy had expired on October 7, 1982. At trial Humphreys testified that he knew the policy had expired at the time of the accident. When asked why he had not contacted Quality after the accident, Humphreys replied: "I didn't have no insurance." (Joint Appendix, p. 56). Further, Quality agents also testified that the policy term was for three months. The West Virginia courts have long held that "the payment or agreement to pay an insurance premium is a consideration for an insurance contract. If the premium is not paid, there is no insurance." Parsley v. General Motors Acceptance Corporation, 280 S.E.2d 703, 707 (W.Va.1981). See also, Nationwide Mutual Insurance Company v. Smith, 172 S.E.2d 708 (W.Va.1970); Hare v. Connecticut Mutual Life Insurance Company, 173 S.E. 772 (W.Va.1934). Here, all of the evidence suggests that both the insured and the insurer contracted for a three-month automobile policy which the insured allowed to expire at the end of the stated policy period when he failed to pay the premium. We find that the Quality insurance policy was a three-month policy that expired by its own terms on October 7, 1982.
 
 
 8
 It is undisputed that W.Va.Code Secs. 33-6A-1 and 33-6A-4 require an insurer to issue notice of cancellation and non-renewal. There is nothing in the Code sections, however, that suggests notice is required that a policy will expire at the end of the policy period for which a premium was charged and paid. In fact, a careful reading of Sec. 33-6A-4 suggests that neither the 30-day cancellation notice nor the 45-day non-renewal notice provisions were meant to apply to the expiration of a policy on its own terms. The last paragraph of Sec. 33-6A-4 reads as follows:
 
 
 9
 Notwithstanding the provisions of subsection (a) of this section, the insurer shall renew any automobile liability or physical damage insurance policy that has not been renewed due to the insured's failure to pay the renewal premium when due, if none of the other grounds for non-renewal as set forth in subsections (b) through (f) of this section exists and the insured makes application for renewal within ninety days of the original expiration date of the policy. If a policy be renewed as provided in this paragraph, the coverage afforded shall not be retroactive to the original expiration date of the policy, but shall resume upon the renewal date at the current premium levels offered by the company. W.Va.Code Sec. 33-6A-4 (1982 Replacement Volume).
 
 
 10
 This paragraph clearly distinguishes the expiration of a policy as compared to cancellation or non-renewal and specifically states that while an insurer must renew a policy that was allowed to expire by the insured's failure to pay the premium, any such renewal "shall not be retroactive to the original expiration date of the policy." This statute leaves no doubt that the West Virginia Legislature intended that an automobile insurance policy expire on its stated termination date upon non-payment of premium.
 
 
 11
 Moreover, the West Virginia Supreme Court has recognized the difference between the concepts of "cancellation" and "expiration." See Farmers' and Merchants' Bank v. Balboa Insurance Company, 299 S.E.2d 1 (W.Va.1982). In Farmers' and Merchants', the court stated that "we are concerned with the non-renewal of an expiring policy rather than the cancellation of a policy." Id. at 2.
 
 
 12
 The district court concluded that the Quality Insurance policy issued to Humphreys was in full force and effect on the date of the accident. This conclusion was based on the erroneous legal conclusion that Quality failed to follow the statutory procedures required to terminate Humphreys' insurance policy by either cancellation or non-renewal. The policy was not cancelled, nor did Quality refuse to renew the policy. Rather, the policy expired by its own terms. Therefore, Quality was not required to give Humphreys notice under either the insurance contract or relevant West Virginia statutes and the policy expired on October 7, 1982.
 
 
 13
 Accordingly, the district court's judgment that the Quality insurance policy was in full force and effect and that Quality had primary liability coverage affecting the estate of Robert J. Shepherd is reversed.
 
 
 14
 REVERSED.
 
 
 
 [1]
 With regard to the policy term, the insurance policy reads, in relevant part, as follows:
 (The insurance company) agrees with the insured ... in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to all the terms of the policy:
 * * *
 
 
 [1]
 POLICY PERIOD. Territory: This policy applies only to accidents, occurrences and loss during the policy period while the automobile is within the United States of America, its territories or possessions, or Canada, or is being transported between ports thereof. The policy expires at 12:01 A.M. Standard Time at the address of the named insured as given in the Declarations Part Two, on the given date therein. (Joint Appendix, pp. 115 and 118) (emphasis added)